**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0002043
28-JUN-2017
07:59 AM**

NO. CAAP-13-0002043

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
TRACY SOUZA, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 12-1-1028)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, and Leonard and Reifurth, JJ.)

Defendant-Appellant Tracy Souza appeals from the June 18, 2013 Judgment of Conviction and Probation Sentence entered in the Circuit Court of the First Circuit ("Circuit Court").[1]/ Souza was charged via Felony Information with one count of Place to Keep Unloaded Firearms Other Than Pistols and Revolvers in violation of Hawaii Revised Statutes ("HRS") section 134-24 (2011) and one count of Ownership or Possession Prohibited of Any Firearm or Ammunition by a Person Convicted of Certain Crimes in violation of HRS section 134-7(b) and (h) (2011). Souza was convicted by a jury and sentenced by the Circuit Court to five years probation, with thirty days in jail for both charges.

On appeal, Souza contends that the Circuit Court erred in (1) denying his oral motion to dismiss based on a faulty charging document; (2) erroneously instructing the jury; (3) refusing to accept Souza's admission that he had previously been convicted of a felony offense unless he agreed to the form of

---

[1]/     The Honorable Rom A. Trader presided.

stipulation drafted by the State; and (4) improperly conducting its colloquy with Souza about the proposed stipulation.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Souza's points of error as follows and affirm.

(1) Souza argues that the trial court erred in denying his motion to dismiss for a faulty Felony Information. Souza's motion at trial was based on the State's failure to allege that he did not have a license to carry a firearm, but his argument on appeal challenges the Felony Information for failing to allege that he was not transporting the firearm legally. Because Souza raises new grounds on appeal, we apply the "*Motta/Wells* post-conviction liberal construction standard," rather than the de novo standard of review. *See State v. Wheeler*, 121 Hawai'i 383, 399-400, 219 P.3d 1170, 1186-87 (2009) (referring to the rule of construction adopted in *State v. Wells*, 78 Hawai'i 373, 894 P.2d 70 (1995) and *State v. Motta*, 66 Haw. 89, 657 P.2d 1019 (1983)). Under the liberal construction standard, a charge is presumed sufficient unless the appellant can show that he was either prejudiced, or a charge could not be reasonably inferred from the language of the charging document. *Id.* (quoting *State v. Merino*, 81 Hawai'i 198, 212, 915 P.2d 672, 686 (1996)).

Souza relies upon *Wheeler* for the proposition that the State's failure to plead an attendant circumstance, the negation of legal transport in this case, is fatal. However, *Wheeler* is distinguishable as to that issue by the fact that the *Wheeler* defendant's objection on appeal was raised first at trial, and because the issue there involved the definition of a word that was not intuitive or common. 121 Hawai'i at 399, 219 P.3d at 1186. Thus, the de novo review under *Wheeler* does not apply, and Souza is mistaken to premise his argument on showing error, rather than showing prejudice. Souza tangentially asserts prejudice by citing to *State v. Elliot*, 77 Hawai'i 309, 884 P.2d 372 (1994), for the proposition that failing to allege all essential elements of the charge is reversible error. In *Elliot*, the defendant was accused of resisting arrest, assault against a

police officer, and disorderly conduct. 77 Hawaiʻi at 310, 884 P.2d at 373. Although multiple victims were involved, the charging document failed to specify the acts that pertained to each victim, such that the defendant could not reasonably know what conduct the charge was based on prior to trial, and thus denied defendant his right to due process. *Id.* at 312-13, 884 P.2d at 3765-76.

Conversely, in this case, there is only one act which could substantiate count one, specifically that Souza maintained control over a firearm which was not a pistol or revolver in a place other than his residence, business, or place of sojourn. While the Felony Information does not allege that Souza was not transporting,

> [n]o indictment for any offense created or defined by statute shall be deemed objectionable for the reason that it fails to negative any exception, excuse, or proviso contained in the statute creating or defining the offense. The fact that the charge is made shall be considered as an allegation that no legal excuse for the doing of the act existed in a particular case.

Haw. Rev. Stat. § 806-29 (1993). Further, multiple witnesses testified prior to Souza's motion challenging the Felony Information that at the time of his arrest, Souza was at a location not on the list of approved destinations for the transportation of firearms. *See State v. Israel*, 78 Hawaiʻi 66, 70, 890 P.2d 303, 307 (1995) (noting that examination is not limited to the charge but includes "all of the information supplied to [the defendant] by the State to the point where the court passes upon the contention that [the charge was insufficient]" (quoting *State v. Treat*, 67 Haw. 119, 120, 680 P.2d 250, 251 (1984))). Accordingly, Souza failed to meet his burden of showing prejudice or an inability to understand what he had been charged with based on the Felony Information and the proceedings up to the point of the challenge. Therefore, his first point of error is without merit.

(2) Souza argues that the Circuit Court erred in accepting the truncated version of Hawaiʻi Pattern Jury Instructions - Criminal ("HAWJIC") no. 15.03A. Specifically, the version accepted by the court and read to the jury excised a portion of the pattern instruction regarding the State's burden

of proving beyond a reasonable doubt that Souza was not transporting a firearm between authorized locations. Souza asserts that this is impermissible burden-shifting, and asks us to vacate based on plain instructional error.

The standard for appellate review of alleged instructional error is "whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Mainaaupo*, 117 Hawai'i 235, 247, 178 P.3d 1, 13 (2008) (quoting *State v. Van Dyke*, 101 Hawai'i 377, 383, 69 P.3d 88, 94 (2003)). If instructional error is demonstrated, we will vacate, irrespective of whether timely objection was made, "if there is a reasonable possibility that the error contributed to the defendant's conviction, *i.e.*, that the erroneous jury instruction was not harmless beyond a reasonable doubt." *State v. Nichols*, 111 Hawai'i 327, 337, 141 P.3d 974, 984 (2006).

In this case, the challenged instruction was part of a series of instructions. The Circuit Court instructed the jury that "[a] person is not guilty of an offense unless the State proves beyond a reasonable doubt that the person acted with the required states of mind, as these instructions specify, with respect to each element of the offense" and that "[t]he burden of proof is on the prosecution with reference to every element of a crime charged[.]" The Circuit Court provided the jury with the following instruction concerning the Place to Keep charge:

> In Count I, the Defendant, Tracy Souza, is charged with the offense of Place to Keep Unloaded Firearms other than Pistols and Revolvers.
>
> A person commits the offense of Place to Keep Unloaded Firearms other than Pistols and Revolvers if he intentionally or knowingly carries or possesses an unloaded firearm other than a pistol or revolver in a place other than his place of business, residence, or sojourn, without a license to carry. That at that time, Defendant believed, knew, or recklessly disregarded the substantial and unjustifiable risks, that the object was an unloaded firearm other than a pistol or revolver and that he did not have a license to carry.
> There are six material elements of the offense of Place to Keep Unloaded Firearms other than Pistols and Revolver, *each of which the prosecution must prove beyond a reasonable doubt*.
>
> These six elements are:
>
> 1. That, [on] or about July 11, 2012, in the City and County of Honolulu, the Defendant

4

intentionally or knowingly carried or possessed the object in question; and

2. That the object in question was an unloaded firearm other than a pistol or revolver; and

3. That at the time he carried or possessed the object in question, the Defendant believed, knew, or recklessly disregarded the substantial and unjustifiable risk, that the object was an unloaded firearm other than a pistol or revolver; and

4. That, the Defendant intentionally, knowingly, or recklessly failed to confine the firearm which was not a pistol or revolver to his place of business, residence, or sojourn; and

5. That, at that time, the Defendant did not have a license to carry; and

6. That, at that time, the Defendant believed, knew or recklessly disregarded the substantial and unjustifiable risk that he did not have a license to carry.

"License to carry" means a license to carry a firearm other than a pistol or revolver therefore issued by the chief of police of the City and County of Honolulu.

(Emphasis added.)

The challenged instruction, relating solely to the enclosed container/transport exception to the charge, followed the pattern instruction, stating that:

It is lawful to carry an unloaded firearm or ammunition in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business, residence, or sojourn, or between these places and a place of repair, a target range, a licensed dealer's place of business, an organized, scheduled firearms show or exhibit, a place of formal hunter or firearm use training or instruction, or a police station.

However, the following final sentence of the pattern instruction was not included in the instruction that the Circuit Court provided to the jury:

It is the burden of the prosecution to prove beyond a reasonable doubt that the Defendant was not carrying the unloaded firearm or the ammunition in an enclosed container or that the Defendant was not carrying the unloaded firearm or ammunition between [specify authorized locations].

HAWJIC 15.03A. Deviation from a pattern instruction, however, "does not automatically result in incomplete and confusing jury instructions." *State v. Sawyer*, 88 Hawai‘i 325, 335, 966 P.2d 637, 647 (1998).

5

The excised portion of the instruction is simply the contrapositive of the previous statement, which was included in the instruction. It is simply logical in light of the instruction that the State has the burden of proof with regard to every element of the charge that if a subsequent instruction says that it is legal for a defendant to carry a firearm within an enclosed container between various authorized locations, it is the State's duty, in order to prove the underlying charge, to disprove that a firearm was being transported in an enclosed container between authorized locations.

Furthermore, the State presented evidence that Souza was stationary with a firearm *in an enclosed container* at a non-authorized location. The defense did not provide any contradictory evidence. Instead, Souza's defense was that the firearm belonged to another member of his party. None of the transportation, enclosed container, or authorized location components were raised as issues in the case at trial. Because there was no evidence that Souza was transporting the weapon at the time, the jury could not consider the defense. *See* Haw. Rev. Stat. § 707-115(1) & (2).

The portion of the pattern instruction regarding the State's burden to disprove the components was not relevant. Thus, there was no instructional error and, to the extent that there was, it was harmless beyond a reasonable doubt. Therefore, Souza's second point of error is without merit.

(3) Souza's third and fourth points of error relate to the stipulation that was entered in the record and read to the jury regarding Souza's prior conviction. Souza's first argument regarding the stipulation is that he was forced to choose, in violation of *State v. Murray*, 116 Hawai'i 3, 169 P.3d 955 (2007), between accepting the State's version of the stipulation, which he argues included irrelevant information, or not being allowed to stipulate to the prior conviction.

In *Murray*, defense counsel stipulated to his client's prior abuse convictions in a felony abuse case, in which the prior convictions were an element of the offense. 116 Hawai'i at 5-6, 169 P.3d at 957-58. The Hawai'i Supreme Court held that the

6

stipulation was invalid as a waiver of a fundamental right without an accompanying colloquy or personal waiver. *Id.* at 10-12, 169 P.3d at 962-64. It further held that a "defendant should be allowed to stipulate to the fact of [any] prior convictions[,]" and that the trial court must thereafter issue a limiting instruction to the jury. *Id.* at 20, 169 P.3d at 972.

A straightforward application of *Murray* is made difficult in this case by the fact that Souza and the State offered their own versions of a proposed stipulation. Souza's proposed stipulation is not in the record, and the only stipulation that appears is the version offered by the State, which reads, in part, as follows:

1. As of July 11, 2012, the Defendant, Tracy Souza, had been convicted of a felony offense in the State of Hawaii.

2. As of July 11, 2012, the Defendant, Tracy Souza, knew that he had been convicted of a felony offense in the State of Hawaii.

3. The Defendant, Tracy Souza, has not been pardoned for such felony offense.

4. As a result of this conviction, the Defendant, Tracy Souza, is prohibited from owning or possessing any firearms or ammunition.

5. As a result of this conviction, the Defendant, Tracy Souza, knew that he was prohibited from owning or possessing any firearms or ammunition.

Souza's hesitation to accept the State's proposed stipulated facts focused on numbers four and five. The State argued that they were obliged to prove both the element as well as the requisite state of mind for each element, which required inclusion of numbers four and five, as they established that Souza knew about the restriction on his possession of firearms. Consequently, if the stipulation did not include numbers four and five, the State contended that it would call Souza's probation officer to introduce the evidence that it believed was necessary to establish the requisite state of mind, including that Souza was aware that he was prohibited from owning or possessing firearms.

The State explained at trial that it believed that the court was obliged to accept Souza's stipulation under *Murray* if Souza insisted on his own version, and that it wanted to be clear

that Souza was not being coerced into agreeing to the State's proposed stipulation:

> [Deputy Prosecuting Attorney]: . . . I just want to make it clear this isn't a situation where I want -- I don't want this to be characterized as the defendant feels like he's forced to stipulate to what I've proposed; because if that's the case, I will withdraw any proposed stipulation. Because I believe he does have the right under *State v. Murray* to stipulate to keep the name and nature out; but it's my opinion that I still need to introduce evidence as to his state of mind. So I do -- I would intend to call the probation officer, not to discuss the name and nature of the prior offenses but just to establish that he did go over the terms and conditions of that probation and they did include the fact that he was prohibited from owning or possessing the firearm. So if the defendant wants to, on his own accord, agree to my stipulation, that's fine; but I don't want it to be a scenario where it's characterized as though - - he felt like he was forced to accept my stipulation.

At trial, Souza contended that his knowledge that he was prohibited from owning or possessing firearms was not an element to the charge and was therefore irrelevant. The Circuit Court disagreed, but explained that it was entirely Souza's choice whether to agree to the State's proposed stipulation and that:

> [I]f he decides that he -- the stipulation as proposed is unacceptable to him, the Court is certainly not going to do anything to try to persuade him or convince him that, you know, he should do that. That's entirely up to him. And so -- but if, however, he chooses, after thinking about it and talking to you about it, making a decision, and upon voir dire by the Court that that's what he wants to do, then the stipulation will stand as it is."[2]

(Footnote added.) Before advising his client, Souza's counsel asked if the Circuit Court was ruling that Souza's state of mind with regard to whether he knew he was prohibited from owning or possessing firearms or ammunition was relevant, and the Circuit Court replied: "Yes."

Following a break in the proceedings and discussion

---

[2]    Souza, in his opening brief, asserts that the Circuit Court acted otherwise. He contends that:

> Ultimately, the trial court made it clear that it would accept Souza's stipulation to the prior conviction element only if Souza "agree[d] to enter the stipulation as proposed by the State." Id. at 19. In other words, Souza's admission would be accepted only if he allowed the stipulation to "stand as it is." Id. at 19.

It is not apparent how Souza's characterization of the Circuit Court's comments has any basis in the totality of the discussion reflected in the transcript.

between Souza and his counsel, and outside the presence of the jury, the Circuit Court reconvened and Souza informed the Circuit Court that he would agree to the State's proposed stipulation "although we had originally not wanted to do that." The Circuit Court conducted a colloquy with Souza which is the subject of Souza's fourth point of error, and then accepted the stipulation as presented and as approved by counsel.

The transcript of proceedings contradicts Souza's contention that he was forced into a Hobson's choice between accepting the State's proposed stipulation or being allowed no stipulation at all. While the parties and the Circuit Court did not explicitly discuss whether the court would accept Souza's stipulation, they did discuss that in the event that Souza's stipulation was entered, whether the State would be allowed to call Souza's probation officer to establish that Souza knew that he was not allowed to possess firearms. Accordingly, the Circuit Court complied with *Murray*, and Souza's third point of error is without merit.

(4) In his fourth point of error, Souza argues that the colloquy regarding the stipulation was inadequate, relying on *Murray's* importation of the colloquy requirement from *Tachibana v. State*, 79 Hawai'i 226, 900 P.2d 1293 (1995) and *State v. Ibuos*, 75 Haw. 118, 857 P.2d 576 (1993). Souza further relies upon *State v. Gomez-Lobato*, 130 Hawai'i 465, 312 P.3d 897 (2013) for the proposition that a series of yes/no questions is insufficient for a colloquy waiving substantial rights.

*Murray* established that a defendant waiving a fundamental right must do so through a colloquy in which the court determines if the defendant understands the right he is waiving, and that his waiver was knowing and voluntary. 116 Hawai'i at 19-20, 169 P.3d at 971-72. *Gomez-Lobato* involved a non-English speaker waiving his right to a jury using a form written in English and after a colloquy conducted in English. The court stated in rejecting the colloquy that "the validity of the waiver of a right to a jury trial is reviewed under the totality of the circumstances surrounding the case, taking into account the defendant's background, experience, and conduct."

130 Hawai‘i at 470, 312 P.3d at 902 (emphasis omitted) (quoting *State v. Friedman*, 93 Hawai‘i 63, 70, 996 P.2d 268, 275 (2000)).

*Gomez-Lobato* is distinguishable from the instant case on the central fact that the defendant was demonstrably not proficient in English. In such a case, a colloquy conducted in English and composed solely of yes/no questions, and a waiver form written in English, were not sufficient to establish that the defendant understood his rights and made a knowing and voluntary waiver of them. Indeed, the supreme court held that "where a language barrier indicates that a defendant's written waiver executed outside the presence of the judge 'might be less than knowing and intelligent,' the court should take additional steps to ensure the defendant understands the right that he or she is waiving." *Id.* at 472, 312 P.3d at 904 (citation omitted).

Here, there is no evidence that English was not Souza's first and only language. *See State v. Onza*, No. CAAP-13-0000025, 2014 WL 660225, at \*6 (Haw. App. Feb. 20, 2014) (affirming defendant's waiver of a jury trial and distinguishing the case from *Gomez-Lobato* because defendant "demonstrated a sufficient understanding of English," and "engaged in dialogue with the circuit court and his counsel, indicating language was not a barrier between [himself] and the circuit court[.]"). In the challenged colloquy, the Circuit Court first confirmed that Souza had reviewed the State's proposed stipulation, and that he had a chance to discuss the stipulation with his attorney. The Circuit Court then confirmed that Souza understood that agreeing to the stipulation would mean that the State did not need to present evidence relating to the prior conviction; that Souza had a constitutional right to have every element proven; that agreeing to the stipulation would mean that each of the five facts included in the stipulation would be considered proven; and that stipulating to those facts was what Souza wanted to do. The Circuit Court then confirmed that Souza had no questions about the stipulation or his rights.

Moving forward, the Circuit Court confirmed that Souza was thinking clearly; and had not had any alcohol, drugs, or medication that were interfering with his ability to make

10

decisions. The Circuit Court then *again* confirmed that Souza had no questions before accepting the stipulation as being made knowingly and voluntarily.

When the Circuit Court asked Souza a series of yes/no questions, and confirmed twice that he had no questions regarding the waiver, Souza's background, experience, and conduct indicated that he understood what he was doing. There was no indication on the record that Souza was not an English speaker or that he had any difficulty with the English language. The Circuit Court gave Souza ample opportunity to ask questions about or clarify the proposed stipulation. Additionally, Souza signed the stipulation which stated the specific facts that he was stipulating to, and included language that he was waiving a constitutional right. While the colloquy was conducted in the form of yes/no questions, there is overwhelming evidence on the record that Souza's waiver was knowing and voluntary. Therefore, the Circuit Court was correct in accepting Souza's agreement to the stipulation and in concluding that his waiver was knowing and voluntary, and the fourth point of error is without merit.

Based on the foregoing, we affirm the Circuit Court's June 18, 2013 Judgment of Conviction and Probation Sentence.

DATED: Honolulu, Hawai'i, June 28, 2017.

On the briefs:

Craig W. Jerome,
Deputy Public Defender,
for Defendant-Appellant.

James M. Anderson,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

11